## CROCKETT *vs.* CROCKETT.

1. The reformation of the deed involved, in this case, with substantially the same facts and instructions, has been passed upon by this court (73 *Ga.*, 647), and the ruling there made is the law of the case; nor are there any new facts which make a new case from the one then made.

2. To divest a man of the control, use and occupation of an estate, an interest in which he had voluntarily given to his daughter, because his daughter and himself were at issue touching the *quantum* of that interest, or the amount of the rent due her, and that, too, in the teeth of the reservation of control in himself in the voluntary conveyance, is much more than a jury ought to be allowed to find in a decretal verdict, and such verdict should be set aside. Nor would it be just, though the inference of the receiver should

Crockett *vs.* Crockett.

be restricted to the collection of a moiety or any fractional part of the rents from the father for rent of the house he himself occupied and from tenants occupying other tenements, and the father should be enjoined from interference with his daughter's part of such rents, the father being solvent.

3. A father by voluntary deed conveyed a half interest in certain property to his daughter for life, with power to dispose of it by will, but "subject, nevertheless, to the following limitations and conditions; that is to say, that the said E. Crockett (the father) is to retain possession and control of said property during his lifetime; porvided, nevertheless, . . . that the said Georgia E. Crockett (the daughter) shall have the right to live in the house on Bass street with the said E. Crockett, but no one else of the family of the said E. Crockett shall have or exercise this right of living with said E. Crockett in said house on Bass street, except the youngest brother of the said Georgia E., to-wit, Charles W. Crockett, and he only so long as he shall remain single and unmarried; and provided, also, should any income be derived from said house and lot on Bass street, by rent or otherwise, the said Georgia E. is to have and receive one-half of said rent after paying for repairs, insurance and taxes thereon." The father re-married, and the daughter would not live with him:

*Held*, that a verdict requiring the father to pay one-half the rented value of the premises while he lived thereon was contrary to law.

· (*a.*) The deed in this case should be reformed in accordance with the previously expressed view of this court.

January 5, 1886

*Res Adjudicata.* Deeds. Injunction. Title. Equity. Before Judge SIMMONS. Bibb Superior Court. April Term, 1885.

On March 29, 1884, Georgia E. Crockett filed her bill against Earlsworth Crockett, alleging, in brief, as follows: On August 2, 1880, the defendant conveyed to the complainant a one-half interest in certain real estate lying on McIntosh and Bass streets in the city of Macon. The deed contained the following clauses:

"To have and to hold said one undivided half interest in said premises to the said Georgia E. Crockett for and during her natural life, with power in the said Georgia E. Crockett to dispose of the same by will in any way and manner that she may see fit and proper, subject, nevertheless, to the following limitations and conditions—that is

to say, that the said E. Crockett is to retain possession and control of said property during his lifetime; provided, nevertheless, the said Georgia E. Crockett is to receive, during the lifetime of the said E. Crockett, one-fourth of all rents or income accruing from said property on McIntosh street; and ʼprovided, also, that the said Georgia E. Crockett shall have the right to live in the house on Bass street with the said E. Crockett, but no one else of the family of the said E. Crockett shall have or exercise this right of living with said E. Crockett in said house on Bass Street, except the youngest brother of the said Georgia E., to-wit, Charles W. Crockett, and he only so long as he shall remain single and unmarried; and provided, also, should any income be derived from said house and lot on Bass street, by rent or otherwise, the said Georgia E. is to have and receive one-half of said rent, after paying for repairs, insurance and taxes thereon. The property hereby conveyed to the said Georgia E. Crockett is not in any way or event to be subject to the debts, contracts or liabilities of any husband she may have, and should the said Georgia E. Crockett fail to dispose of the property herein conveyed to her, by will, as herein authorized and empowered, said property, at the death of said Georgia E. Crockett, is to revert to the said E. Crockett; and the said E. Crockett will, and his heirs, executors and administrators shall, the said undivided half interest in the premises aforesaid to the said Georgia E. Crockett forever warrant and defend."

The defendant has kept possession of the property, collected rent and managed and controlled it. He has, however, failed and refused to pay over to the complainant her share of the rents. In 1883, the Bass street house was rented to one Crossland for $37.50 per month, and she was entitled to one half thereof. The defendant, with his family, was occupying his own house next door, but in July, 1883, he exchanged with Crossland and moved his family into the Bass street house. Inasmuch as it is covenanted in the deed that no one of the family, except himself, is to occupy said house, he is as liable for rent as if Crossland had continued to occupy it, and he is bound to pay to her her part of the rent. The rents are collected in small amounts. The complainant has twice been compelled to sue the defendant at law for her share of the rents, and the cases are still pending, and she will be compelled continually to bring suits. He has paid only a small amount

to her, and is largely in arrears. She has no other means of support. She has proposed to have an agent to collect the rents for both, but this has been rejected. The prayers were for a receiver to collect the rents; that the defendant be enjoined from interfering therewith; and that, on the final hearing, he be required to account fully to the complainant in respect to all rents not included in the two suits pending; for subpœna and general relief.

By amendment, it was prayed that the common law cases should be consolidated with this, and the entire question be determined at once.

The defendant answered, in brief, as follows: The deed does not convey the rights set up by the complainant. If it does, it does not speak the true intention which he had in making it. He made out and gave to Isaac Hardeman, Esq., certain written instructions for drawing the deed, it being a voluntary deed, the only material portion of which was as follows: "During her lifetime, Georgia to receive one-fourth of all rents and income, after paying taxes and insurance and all other expenses required to keep the property in good repair." All that part of the instructions, as to the payment of taxes and expenses, was, by accident or mistake of said attorney, omitted therefrom, and this was not discovered by him until after the delivery of the deed and when the attorneys of the complainant claimed one fourth of the gross income from the McIntosh street property, without deducting taxes, insurance, etc. He prays that the mistake be corrected, so as to carry out the true intention in making it. He set out an account of collections, expenditures and amounts paid to the complainant.

The written instructions given to the attorney were as follows:

"Direction to I. Hardeman to draw deed to McIntosh street property: To Georgia E. Crockett give ½ interest in this after my death; me to have full control until that time; after my death, Georgia to have full control during her lifetime, with right to dispose of it as she may see best. Her interest not to be sold for any debt of hers

or any one else during her lifetime.    Georgia to receive one-fourth of all rents or income accruing from said property until my death. After that time one-half of rent or income, after paying taxes and insurance and all other expenses required to keep the property in good repair.

"Direction to I. Hardeman to draw deed to Bass street property: One (½) half in this property after my death; not to be sold for any debt of hers during her lifetime, with the right to dispose of it as she may see fit at her death.    Georgia to have the right to live in the house with me, and no one else of the family, except her youngest brother, C. W. Crockett, as long as he remains single; and if the house is rented, Georgia to receive one-half of the rent after paying for repairs, taxes and insurance; me to have full control during my life."

On the trial, the evidence for the complainant was, in brief, as follows: The defendant executed the deed, and sent it to her to see if she would accept it.    She said yes, and it was taken by the clerk of the superior court for record.    Her father became angry with his children, and, as she learned, went to the clerk to get the deed; she sent her younger brother down and got it.    The first wife of the defendant, who was the mother of his children, was dead, and he was contemplating a second marriage, and it was about this the disagreement arose.    He had been living in the Bass street house, but promised that he would not bring his second wife there to live.    The complainant lived there for some time, and her father and his family lived elsewhere.    One of her brothers died, leaving children, and the defendant took them to live with him.    The complainant finally moved out of the house, because her father sent a person to her to see if she was willing to move, and she did so, in order to let it be rented for the mutual benefit of herself and father.    The renter remained about thirteen months, and was succeeded by another.    At that time, the defendant was living in a house which belonged to him, and which was next door to the Bass street property.    He exchanged with the tenant and moved into that house with his wife and grandchildren, and has remained there since without paying any rent.    A son of the defendant testified

that he was in partnership with his father in business, and that he never heard his father say anything about a mistake in the deed, but had heard him say that the deed was invalid and he intended to break it. There was other evidence as to the amount of rents, etc., which need not be set out.

The evidence on behalf of the defendant was, in brief, as follows : Isaac Hardeman, Esq., testified, in effect, that he received the written instructions, with the request to draw the deed accordingly ; that he omitted from the deed the words, " after paying taxes," etc. ; that if there was any error in the instructions, it would, of course, also enter into the deed.

The defendant testified, in brief, as follows : The deed to the complainant was voluntary. The defendant wrote the instructions and gave them to his attorney to draw the deed. His intention was for the taxes, insurance and expenses to be paid, and for the complainant to receive her share of the net income. He did not discover the mistake in the deed until the first suit was brought against him, and even then supposed the word "income" would be construed to mean net income. After his second marriage, he did not move at once into the Bass street house where his daughter was, because she objected, and he wanted to avoid a scene. She lived there about eleven months, and he boarded part of the time and kept house part of the time. One of his sons and his wife died, leaving four orphan children, which the defendant took to live with him. When the complainant moved, the house was rented for a number of months to two successive tenants. The defendant's family was large, and he did not have room in the house where he lived, and besides, he had an idea that his daughter would come and live with him. He therefore exchanged houses with the tenant in the Bass street house. After his son's death, the complainant staid with him for a short time.

Letters between the parties were introduced, which tended to show that the second marriage was the great cause of dissension. There was also much other conflicting evidence as to the amounts of rents collected, the improvements made, etc., which need not be set out in detail.

The jury found the following verdict:

"We, the jury, find and decree that the deed be so reformed as to read one-fourth the gross income and rents from the McIntosh street property prior to the death of Mrs. E. Crockett, and after her death, one-half the net income. We find for the complainant in the sum of nine hundred and sixty-one dollars and sixty-five cents, including principal and interest. We also find and decree that a permanent receiver be appointed. In the above amount we find both complainant and defendant liable for rent for the Bass street property for the time they have occupied it at the rate of thirty ($30) dollars per month."

The defendant moved for a new trial, on the following among other grounds :

(1.) Because the verdict was contrary to law and evidence as to each and all the findings.

(2.) Because the court charged as follows : "Then you will determine what was the mistake. Did he intend for Miss Crockett to bear her part of the expenses now ? Was that what his intention was when he wrote to Col. Hardeman, or did he intend that she should only commence bearing her part of the expenses after his death? You have heard the testimony, and must say from it what the mistake was. If you find that it was his intention to put in that she should bear her part of the expenses now, that she was to get only one-fourth of the net income now, then you will say so in your verdict, and order it put in the deed. If you find that it was his intention that she should run on until he died, and then she was to pay her part of the expenses, you should say so, and order it put in the deed."

(3.) Because the court refused to charge that, according to the instructions given to Hardeman by Crockett, it was his intention to give complainant one-fourth of the rent

from the McIntosh street property, after deducting insurance, taxes, repairs and necessary expenses.

(4.) Because the court refused to charge that the jury could not decree a receiver to be appointed unless it was shown that the respondent was insolvent.

(5.) Because the court charged as follows: "I submit to you whether you appoint a permanent receiver to take charge of that property, and rent it out, and pay the expenses on it, and pay Miss Crockett her part of it, or whether you appoint a receiver to step in and secure one-fourth of the rent every month and turn it over; that will be for you to say. You must say specifically in your verdict whether you appoint one or refuse to appoint one."

(6.) Because the court erred in submitting to the jury the question whether or not they must appoint a receiver.

(7.) Because the court refused to charge as follows: "If the jury find from the evidence that the defendant has occupied the Bass street property since July, 1883, but that he has not precluded complainant from also occupying it; that she could, if she had wished, also have occupied her share of the house, defendant is not liable to complainant for rent for the Bass street property."

(8.) Because the court charged as follows: "If you believe from the evidence that Mr. Crockett moved back there, whether it was with or without her consent, she still had a right to go there under the deed. But upon that point, I charge you, that if you believe from the evidence in the case that there was a disagreement in that family, a family discussion, and that if she went back there, she could not live peaceably and happily, that there would be constant dissensions and quarrels, then I charge you it was not necessary for her to go back; and if Mr. Crockett occupied it, he must pay her her part of the rent. I, say if that was so, if she refused to go without any fault on her part, but in order to keep out of broils and dissensions and family feuds, and she could not live there peaceably and happily and without any fault of hers, then Mr. Crockett must pay her

v 75-14

her part of the rent, after deducting the insurance, expenses and taxes."

The motion was overruled, and the respondent excepted.

For the former report of the common law branch of this litigation, see 73 *Ga.*, 647.

HARDEMAN & DAVIS; C. L. BARTLETT, for plaintiff in error.

HILL & HARRIS, for defendant.

JACKSON, Chief Justice.

A bill was filed by Miss Crockett against her father for the recovery of rents due her from certain property in which he had given her certain rights, and for the appointment of a receiver to take charge of the property and divide the rents, or to collect her part thereof, on the ground that her father would not pay her the rents; that she had sued him twice for installments due, and would have to continue doing so. A verdict was returned in favor of complainant for a certain sum of money, on a construction put by the jury on instructions given to the scrivener who wrote the deed, and a reformation of it in accordance with their views of right, under their construction of the papers—the deed, as it stood, and the instructions all being in writing,—in favor also of the appointment of a receiver, and in favor of the father paying rent for the house in which he lived, because he had taken the wife of a second marriage there, and for that reason his daughter would not live with him; and against the reformation of the deed required by the adjudication of this court in the case of *Crockett vs. Crockett*, on substantially the same facts, at the September term, 1884.*

A decree was made in accordance with this verdict, a motion for a new trial was denied, and the denial of the same, on grounds therein specified, is the matter for review here.

73 *Ga.*, 647.

1. We think that the reformation of the deed, in ac‑ cordance with the testimony of Mr. Hardeman, the scrive‑ ner, and Mr. Crockett, the plaintiff in error here, and with these same instructions and the same testimony, substan‑ tially before us, was passed upon by this court at the Sep‑ tember term, 1884 ; and the whole matter, in respect to its reformation, was then adjudicated between the same parties, and is the law of this case. Of course, it cannot be reversed by the finding of any jury, unless new facts had made an entirely new case, or there were new evidence bearing upon the mistake which this court then saw from the evidence then in, and the correction of that mistake then decided to be the true intention of the grantor. We are unable to see any such new evidence in this record, and conclude that the court erred in not granting the new trial on that ground.

2. We are of the opinion that, to divest a man of the control, use and occupation of an estate, an interest in which he had given voluntarily to his daughter, because his daughter and himself were at issue touching the *quan‑ tum* of that interest, or the amount of the rents due her, and that, too, in the teeth of a reservation of control in himself in the voluntary conveyance, is much more than a jury ought to be allowed to find in a decretal verdict, and that such verdict should be set aside. If the interference of the receiver in the property be restricted to the collec‑ tion of a moiety, or any other fractional part of the rents from the father for rent of the house he himself occupied, and from tenants occupying other tenements, and if the father is enjoined from interference with his daughter's part of such rents, when there is no pretense that the father is insolvent and unable to respond for rents or dam‑ ages, such modification, in our judgment, makes the case but little better, and it remains unjust, unconscientious and inequitable. The right of the father to control the entire property during his life is expressly reserved in the conveyance of a half interest to his daughter. The abso‑

lute right to half the fee is hers only at his death, and then becomes so only by her making a will; if she does not exercise that privilege, it is an interest for her life only, and reverts, on her death without will, to her father. So that the only interest she takes under this deed is in the rental; the management and control remains her father's. How it can so remain, when a receiver has power to collect from him half the estimated value of the rent of his own house in which he lives, and when he is enjoined from collecting one-fourth of the rental of the other property, and from all interference with a receiver in respect to one-fourth thereof, is very difficult to see.

Therefore the case must be remanded for a new trial on this ground.

3. Again, among the restrictions put upon the daughter is this: After the words which give the daughter the half interest " for and during her natural life with power in the said Georgia E. Crockett to dispose of the same by will in any way and manner she may see fit and proper," follow these words, " subject, nevertheless, to the following limitations and conditions—that is to say, that the said E. Crockett is to retain possession and control of said property during his lifetime, provided, nevertheless, . . . that the said Georgia E. Crockett shall have the right to live in the house in Bass street with the said E. Crockett, but no one else of the family of the said E. Crockett shall have or exercise this right of living with said E. Crockett in said house on Bass street, except the youngest brother of the said Georgia E., to-wit, Charles W. Crockett, and he only so long as he shall remain single and unmarried; and provided, also, should any income be derived from said house and lot on Bass street by rent or otherwise, the said Georgia E. is to have and receive one-half of said rent after paying for repairs, insurance and taxes thereon."

It is to be noted that none of his family had that right to live in the house except her young brother and herself,— a stipulation evidently put in by the father to guard him-

self against the other children, all being in conspiracy against him, in view of his approaching marriage. It is to be noted, too, that this Bass street house was to be his home, and his daughter to have the right to continue there, where they both lived when the deed was made; and yet, when on the death of a son and his wife, he moved from a smaller house to this house (which he had left in possession of the daughter for a considerable time, in consequence of her contumacy, and carried his new wife to another house because he wished to avoid a scene), when he moved there, in order to have the orphan grandchildren with him, this jury, in this decretal verdict, make him pay one-half of the value of the rental of his own home while he lived in it. Her right was simply to have a home there in her father's house—a right never denied her,—and the jury return a verdict that he shall pay her half the rent of it, because she did not, on account of respect for her dead mother, as she wrote her father, choose to live with her step-mother.

The fact is that the case, from beginning to end, exhibits an ingratitude and deficiency of filial respect that defies the command of the Almighty on Sinai to honor father and mother, and exhibits conduct which no court of equity or of morals can approve.

The father wishes to marry again, to exercise a clear legal and moral right; his children conspire to make the new marital bed hot, if he does; by a most generous and beneficent gift, ample for the support of the daughter who lived with him, he seeks to conciliate her opposition and recover her dutiful affection; she turns the back of her hand to all his kindness, and makes that kindness the means to embitter with lawsuits the remnant of a parent's life. A jury applauds her undertaking, and makes a decretal verdict that he shall pay her for half the rent of the home which is his by the deed, and to which her only right is to live as a child should with her parent. Such a verdict shocks the moral sense.

Crockett vs. Crockett.

The excuse, and only excuse, her counsel can give to uphold such a verdict is, that after she and her brother left this home place, her father rented it for a year or two, and that he ought to have continued to rent it, so that she might get half the rent, and not move back to his own home with his own wife and his own orphan grandchildren. Not one word appears in this record that, while the father and stepmother did not occupy their home under the deed, to avoid quarrel and controversy with her, but left her in full possession of it, he ever demanded, or she ever thought to tender him half rents therefor.

Certainly this part of this verdict cannot be upheld.

Something outside of law and evidence disclosed in this record must have caused such a finding. It may be that E. Crockett is very unpopular, or his daughter quite popular, or that some other hidden force, like passion or prejudice, induced the jury's action, all unknown to themselves and unguarded against by them. Whatever was the power which made the verdict, in our judgment, it was not the facts disclosed by this record, nor the law of this case, nor the equitable rights, nor the moral obligations of these litigants.

In our opinion the deed should be reformed in accordance with the views of this court in the trial of a branch of the case; that is to say, so as to give the defendant in error only an interest in the net income; no receiver should be appointed to disturb the control of the plaintiff in error over the property or its rents, issues and profits reserved to him in the deed, he being able to pay it over to his daughter himself, as he is solvent; and not one cent should he be required to pay for the use and occupation of his own homestead, recognized as his in the deed. If his daughter chooses to live with him, well; if not, well; the choice is with her; but if the choice be not to live there, when she declines it, she can recover no equivalent.

Judgment reversed.